THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| NUBAR ARAKELIAN,<br><br>    Plaintiff,<br><br> v.<br><br>VERIZON NEW JERSEY, INC.,<br><br>    Defendant. | Civil No. 17-02635 (JS) |
| DENNIS BELL a/k/a<br>KBAZ TASTE OF PHILLY,<br><br>    Plaintiff,<br><br> v.<br><br>VERIZON NEW JERSEY, INC.,<br><br>    Defendant. | Civil No. 17-12640 (JS) |

**MEMORANDUM OPINION**

This matter is before the Court on the "Motion[s] for Summary Judgment" ("Motion") [Doc. Nos. 29, 14] filed by defendant Verizon New Jersey, Inc. The Court received the opposition filed by plaintiffs Nubar Arakelian [C.A. No. 17-02635, Doc. No. 35] and Dennis Bell a/k/a KBAZ Taste of Philly [C.A. No. 17-12640, Doc. No. 17], and defendant's replies [C.A. No. 17-02635, Doc. No. 38; C.A. No. 17-12640, Doc. No. 18]. Defendant seeks summary judgment

1

on all claims raised in these two consolidated actions. Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of this Court to hear the case. [C.A. No. 17-02635, Doc. No. 9; C.A. No. 17-12640, Doc. No. 16]. The Court recently heard oral argument. For the following reasons, defendant's motions are DENIED.

**BACKGROUND**

This is a consolidated action originally filed by plaintiff Nubar Arakelian in federal court. Shortly thereafter, another case was filed by plaintiff Dennis Bell a/k/a KBAZ Taste of Philly (hereinafter, "Bell") in New Jersey state court. Defendant removed Bell's case to federal court where it was consolidated with the Arakelian case for discovery and case management purposes only. See Order, Dec. 22, 2017 [Doc. No. 21]. Both actions concern the same property and course of events.

On or about March 25, 2011, Arakelian's limited liability company ("LLC") - Marara, LLC - entered into a Commercial Lease Agreement with Bell's LLC - KABZ, LLC - for a five (5) year term for a property located at 7801 Maple Avenue in Pennsauken, New Jersey.[1] Arakelian Compl. ¶ 8 [Doc. No. 29-4]. Plaintiff Arakelian alleges he is a Pennsylvania citizen and the sole member of Marara,

---

[1] The lease was formally entered into by Marara, LLC and KABZ, LLC. See Mot., Ex. G [C.A. No. 17-02635, Doc. No. 29-4]. The deed to 7801 Maple Avenue was in the name of Marara, LLC. See id., Ex. E.

2

LLC, which was formed on April 14, 2008. Arakelian Opp. at 16; see id., Ex. J. Plaintiff Bell alleges he is a Pennsylvania citizen and the sole member of KABZ, LLC and KKBAZ, LLC, both of which were formed around mid-2012 and engaged in business as a pretzel bakery and frozen yogurt shop at 7801 Maple Avenue. Letter, Dec. 14, 2018 [C.A. No. 17-12640, Doc. No. 23]; see Bell's Resp. to Def.'s Interrog. Nos. 5, 6 [Doc. No. 18-1]. Bell alleges that KBAZ, LLC and KKBAZ, LLC were dissolved on April 13, 2016. See Bell's Resp. to Def.'s Interrog. Nos. 5, 6. Arakelian stated at oral argument his company, Marara, LLC, was recently dissolved as well but counsel also indicated that, if necessary, plaintiff would revive the LLC for purposes of this litigation.

Around late 2012 or early 2013, Bell contends his businesses were impeded when he began experiencing problems with plumbing, including "poor drainage, backing up of drainage into the street, and lack of water pressure." Arakelian Compl. ¶ 9. Despite Arakelian's efforts as landlord to resolve the issue, the problem persisted. On July 31, 2014, Bell contends he was forced to terminate business and vacate the property. Bell Compl. ¶ 3 [Doc. No. 29-4]; see Arakelian Compl. ¶ 11. The building was subsequently quarantined by the Pennsauken Sewer Department due to the backup of drainage into the street. Arakelian Compl. ¶ 12. Sometime in early 2015, Arakelian hired a project manager to investigate possible causes for the plumbing issue. Id. ¶ 13. The investigation

3

ultimately determined that it resulted from defendant's installation of a "Verizon duct conduit bank." Id. ¶ 14. Specifically, plaintiff was informed defendant and/or its employees, agents, or subcontractors "ripped out a [3 to 4 foot] portion of the Property's sanitary sewer lateral" when it installed the conduit bank. Id. ¶ 15.

By late 2015, Arakelian was in contact with defendant and its representatives to coordinate the necessary repairs. See Arakelian Opp. at 8-9. Defendant proceeded to file a claim with its insurance carrier, Sedgwick Claims Management Services, Inc., listing Arakelian as the claimant and "[Verizon] conduit installed in 1997 Maple Ave" as the claim. Id., Ex. D. Around the same time, defendant "retained a contractor to rearrange four (4) PVC conduits in front of the property . . . to allow for placement of a new sewer lateral." Caniglia Cert. ¶ 7 [Doc. No. 29-2]. However, since the remediation, defendant has maintained it is neither at fault nor able to identify the contractor responsible for the conduit's installation and plaintiffs' subsequent injuries and damages. See Arakelian Opp., Exs. E-G.

Defendant now moves for summary judgment alleging plaintiffs' claims are barred by the New Jersey statute of repose. Defendant also argues that plaintiffs are not the real parties in interest and therefore lack standing to sue. In support of its motion, defendant submits the Certification of Mike A. Caniglia, Verizon's

4

Local Manager of Contract Services whose territory includes plaintiffs' property. See Caniglia Cert. ¶ 1. Caniglia attests he has "personally reviewed the conduit print," and asserts that this "section of the conduit was installed in 1997 under work order number 31-4704C." Id. ¶ 4. Caniglia states the "duct conduit bank was installed as an addition to existing underground conduit in this area in order to expand the availability of Verizon's services for this territory." Id. ¶ 5. Caniglia also states he is "unaware of any records showing any other underground work performed on this duct conduit bank by Verizon and/or its subcontractor in front of the property since . . . [it] was installed in 1997." Id. ¶ 8.

Plaintiffs oppose defendant's motion, contending defendant cannot assert the statute of repose as a defense because it is "a utility provider that 1) installed the conduit in order to expand its business in the geographical area, [who] 2) continues to exert dominion, ownership and control over the conduit and 3) does not fall within the class of persons entitled to repose." Arakelian Opp. at 2. Plaintiffs further contend that defendant's reliance on Caniglia's Certification is insufficient to support its motion for summary judgment as to the issue of repose. See Bell Opp. at 6.

## DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists "no genuine

5

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, 477 U.S. 242, 256 (1986). Summary judgment is not appropriate, however, if the dispute over a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. "[T]he substantive law will identify which facts are material." Id. at 248. Only disputes over facts that weigh on the case's outcome "will properly preclude the entry of summary judgment." Id. The Court must view all evidence and draw all reasonable inferences in a light most favorable to the non-moving party. See Startzell v. City of Philadelphia, 533 F.3d 183, 192 (3d Cir. 2008) (citation omitted).

The moving party bears the initial burden of informing the Court of the basis for its motion and demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once satisfied, the burden shifts to the non-moving party to demonstrate "a genuine issue for trial." Anderson, 477 U.S. at 250 ("[W]hether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."). The party opposing summary judgment may not "rest upon mere allegation[s] or denials of his pleading," but

must set forth specific facts and evidence demonstrating a genuine dispute for trial. Id. at 256; Fed. R. Civ. P. 56(c)(1)(A).

**B. Statute of Repose**

The New Jersey statute of repose, N.J.S.A. 2A:14-1.1(a), provides that:

> a. [n]o action . . . to recover damages for any deficiency in the design . . . or construction of an improvement to real property . . . shall be brought against any person performing or furnishing the design, . . . or construction of such improvement . . . more than 10 years after the performance or furnishing of such services and construction. This limitation shall serve as a bar to all such actions.

The New Jersey Legislature enacted the statute of repose in response to construction-defect cases and with the intent of insulating construction professionals (such as architects, planners, designers, builders, and contractors) from indefinite liability through operation of the discovery rule. The Palisades at Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 453 (2017) (citing Town of Kearny v. Brandt, 214 N.J. 76, 93 (2013)). "Unlike a statute of limitations, the statute of repose 'does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action[] from ever arising.'" Daidone v. Buterick Bulkheading, 191 N.J. 557, 564-65 (2007) (quoting Rosenberg v. Town of N. Bergen, 61 N.J. 190, 199 (1972)).

Three prerequisites must be shown in order for the statute's protections to take effect: (1) the improvement is of the type

covered, (2) the defendant falls within the class of persons covered, and (3) the limitations period was properly triggered more than ten years ago. See State v. Perini Corp., 221 N.J. 412, 426-27 (2015) (citing Russo Farms, Inc. v. Vineland Bd. of Educ., 144 N.J. 84, 97 (1996)); Route 18 Cent. Plaza, L.L.C. v. Beazer E., Inc., 54 Fed. App'x 345, 348-49 (3d Cir. 2002).

"The statute of repose applies only to work that constitutes an 'improvement to real property.'" Perini Corp., 221 N.J. at 426 (citation omitted). "Calculation of the ten-year limitations period . . . generally commences one day after issuance of the certificate of substantial completion for the project." Id. (citation omitted). But the law "distinguishes between defendant contractors who are hired to perform limited services and defendants with supervisory responsibilities that span the entire project" in calculating when the limitations period commenced. Id. at 428. The party that raises the statute of repose defense bears the burden of proving its applicability. Daidone, 191 N.J. at 563; see Route 18 Cent. Plaza, L.L.C., 54 Fed. App'x at 349.

Because defendant has not met its burden of showing the statute of repose applies in this matter, in addition to finding genuine disputes of material facts sufficiently raised by plaintiffs, the Court will deny defendant's motion for summary judgment for the reasons that follow.

### 1. Defendant's Certification is Not Sufficient to Permit Summary Judgment on the Statute of Repose

The Court finds defendant has not met its burden of showing the statute of repose applies in this matter. In support of its claim, defendant submits the Certification of its employee, Michael A. Caniglia. However, the Caniglia Certification fails to satisfy defendant's burden of establishing whether it is within the class of persons or entities entitled to repose, and if so, when the ten-year limitations period was triggered.

Defendant offers the Caniglia Certification to establish when the conduit was installed, i.e. 1997, as well as when the ten-year limitations period commenced. However, the Caniglia Certification raises fact questions as to whether subsequent work or repairs were performed after 1997. Caniglia's Certification states that he is "unaware" of any such work. Caniglia does not, however, indicate whether his belief is derived from personal knowledge, documentary evidence, or some other basis. Further, as will be discussed infra, plaintiffs present a fact question as to whether defendant hired another contractor (Kline Construction Co.) to perform work in the area at issue between 2008 and 2015. Although Caniglia stated he is unaware of any subsequent work or repairs made to the conduit, this factual dispute raises the possibility that the defect and plaintiffs' injuries were caused by subsequent work performed in 2008-2015 and not the 1997 installation.

Plaintiffs challenge the Caniglia Certification on several bases. Generally, plaintiffs contend that the Certification is insufficient to meet defendant's burden of demonstrating the statute of repose applies. Specifically, plaintiffs contest Caniglia's claim that the conduit "was installed under work order 31-4704C" which defendant has not produced. Arakelian Opp. at 12; see Caniglia Cert. ¶ 4. Plaintiffs allege this work order would identify the alleged subcontractor defendant hired, and presumably the precise date(s) on which the work was completed. See Arakelian Opp. at 11-12. Plaintiffs also challenge Caniglia's claim that no work was performed on the conduit since its 1997 installation, noting Caniglia fails to state how long he has worked for defendant and the complete basis for his statement. Id. at 6-7; see Caniglia Cert. ¶ 8. To this effect, plaintiffs produced fourteen (14) "DigType" work orders it received as a result of a subpoena served upon defendant's contractor, Kline Construction Co., all dated between the years 2008 to 2015. See Arakelian Opp. at 14-15; Id. Ex. I [Doc. No. 35-4]. This creates a fact question as to whether defendant did work at this site after 1997.

Defendant responds to plaintiffs' arguments by alleging plaintiffs have offered "no evidence or arguments to disturb [the] case law." Def.'s Opp. at 11 [Doc. No. 38]. Defendant contends its alleged omissions and defects have no bearing on its motion. See Def.'s Opp. at 2. The Court disagrees. As noted, Caniglia does not

10

affirmatively assert no work took place between the relevant dates, but rather, simply states he is "unaware of any records" which would confirm or deny that work was performed. In addition to defendant not meeting its burden of proof, plaintiffs have set forth sufficient facts and evidence in the form of the fourteen (14) work orders that establish a possible alternate date for the tolling of the limitations period.

Thus, the Court finds defendant has failed to meet its burden of demonstrating that the statute of repose applies here. Further, even if the Court were to assume defendant has met its burden, its motion would still fail because plaintiffs have sufficiently rebutted Caniglia's claims by presenting facts and evidence demonstrating genuine disputes of material facts.

### 2. Plaintiffs Have Demonstrated Other Genuine Disputes of Material Facts that Preclude Summary Judgment

The Court finds that other genuine disputes of material facts preclude granting summary judgment in favor of defendant. Plaintiffs have presented sufficient facts and evidence that enable a reasonable factfinder to conclude defendant does not fall within the class of persons or entities entitled to repose.

A plain reading of the statute of repose indicates defendant is not entitled to the ten-year limitations period if it was in actual possession and control of the conduit in the years following its 1997 installation. The statute reads in relevant part:

> This limitation . . . shall not apply to actions against any person in actual possession and control as owner, tenant, or otherwise of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought.

N.J.S.A. 2A:14-1.1(a); see Hopkins v. Fox & Lazo Realtors, 242 N.J. Super. 320, 328 (App. Div. 1990) ("[T]he statute does not preclude suit against those presently in possession of or responsible for the property where the injury occurs").

Defendant has stated the conduit's installation was performed by an unknown subcontractor on an uncertain date. Although not deciding the issue, it is likely that if defendant's subcontractor did the work the subcontractor would enjoy the protection of the statute upon completion of its specified task. See Hopkins v. Fox & Lazo Realtors, 242 N.J. Super. 320, 328 (App. Div. 1990) ("[T]he ten-year statutory period begins when the architect or contractor completes its task with respect to the property involved in the claim."). However, if defendant acted in a supervisory role throughout the conduit's installation and subsequently maintained possession and control of the conduit, defendant would not enjoy the same protection. See Perini Corp., 221 N.J. at 428-29 (holding that if a defendant has a "continuing responsibility throughout the construction of the project or a specific improvement, the ten-year limitations period commences when the project has been

12

certified as substantially complete"); see also Hopkins, 242 N.J. Super. at 328.

Viewing the record and drawing all reasonable inferences in the light most favorable to plaintiff, the Court finds plaintiffs have set forth specific facts and evidence to demonstrate a genuine issue for trial. Anderson, 477 U.S. at 250, 256. Genuine disputes of material facts regarding defendant's role in the installation, possession, and maintenance of the conduit preclude the Court from granting summary judgment in defendant's favor.

Plaintiffs contest the applicability of repose on the basis that defendant supervised the installation of the conduit and has since asserted ownership and control over it. Plaintiffs point to the following evidence in support of their contentions:

- Documents provided by defendant establish defendant hired a contractor to install the conduit in 1997;

- Defendant's employee's statement making clear that he would be "processing a[n] [insurance] claim through [defendant's] Risk Management [G]roup";

- An insurance claim filed by defendant after it received notice of plaintiffs' losses, listing the claimant as plaintiff and the claim as: "Verizon conduit duct bank installed in 1997";

- Defendant's agent's statement that Verizon was opening "a larger trench to relocate their conduit" as a remedial measure, manifesting defendant's possession and control;

- Caniglia's Certification stating the "duct conduit bank was installed as an addition to existing underground conduit in their area in order to expand the availability of [defendant's] services for this territory"; and

13

- Fourteen (14) "DigType" work orders produced by defendant's contractor, Kline Construction Co., dated between 2008-2015.

Arakelian Opp. at 8-11. The Court agrees this collection of facts and evidence may establish that at all relevant times defendant was in actual possession and control of the conduit at issue. In this event, a reasonable factfinder could rule in plaintiffs' favor on the issue of repose.

Although defendant relies on the decision in Jersey City Mun. Utilities Auth. v. NJ Transit Corp., C.A. No. A-1748-16T2, 2018 WL 1630164 (N.J. Super. Ct. App. Div. Apr. 5, 2018) (hereinafter, "JCMUA"), its reliance is misguided. In JCMUA, the issue on appeal was whether the plaintiff – a governmental unit – was barred from asserting claims beyond the statute's ten-year limitations period. Id. at *1-2. The trial court had dismissed the case after finding the statute of repose precluded the claims that plaintiff sought to assert. Id. at *2. It also found the claims did not fall within any of the statute's exceptions that allowed certain actions to be brought beyond the ten-year window by "a governmental unit." Id.; see N.J.S.A. 2A:14-1.1(b)(2). Despite the plaintiff asserting that the gross negligence exception applied, the appellate court agreed with the trial court, finding that plaintiff failed to assert a claim for gross negligence. Id. at *3. Here, defendant is neither

a governmental unit nor do plaintiffs assert the "gross negligence" exception. Thus, JCMUA has no bearing on the present action.

### C. Standing

Defendants argue in the alternative that, even if the statute of repose does not apply, plaintiffs lack standing to assert claims on behalf of plaintiffs' limited liability companies ("LLCs"). Marara, LLC (Arakelian's LLC) owned 7801 Maple Avenue and plaintiffs Commercial Lease Agreement was entered into between Marara and KBAZ, LLC (Bell's LLC). See Mot., Br. at 14-15. Therefore, KBAZ, LLC was the tenant and Marara, LLC the landlord. Defendant also argues that the damages plaintiffs seek are losses sustained by their LLCs. See id. This includes the three (3) loans asserted by Bell, which were issued to KBAZ, LLC and his other company, KKBAZ, LLC. Id.

In their opposition, plaintiffs contend they have standing to sue despite naming themselves individually in this action and not their LLCs. Plaintiffs argue their LLCs are single-member entities with direct "pass through" income and any gains or losses sustained by the businesses are essentially incurred by plaintiffs in their individual capacities. See Arakelian Opp. at 17; Bell Opp. at 7. Bell indicated at oral argument and submitted his loan agreements to document the fact that he personally guaranteed the loans which were issued to his LLCs and therefore has standing to sue in his capacity as the guarantor.

15

The constitutional minimum for standing under Article III consists of three requisite elements. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). The plaintiffs must show that they "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citations omitted). "The party that invokes federal jurisdiction bears the burden of establishing these elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

To establish an injury in fact, plaintiffs must demonstrate the 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560). For an injury to be particularized, it "must affect the plaintiff in a personal and individual way." Id. (quoting Lujan, 504 U.S. at 560 n.1). Further, individuals lack standing to sue on behalf of a corporation or company for losses sustained by the business entity. See Johnesee v. Stop & Shop Companies, Inc., 174 N.J. Super. 426 (N.J. Super. Ct. App. Div. 1980). This is also the case for an LLC regardless of how many members comprise it.[2]

---

[2] See, e.g., N.J.S.A. 42:2C-4(a) ("A limited liability company is an entity distinct from its members."); In re Revstone Indus. LLC, 690 Fed. App'x 88 (3d Cir. 2017) (single-member LLC lacked standing to appeal in its individual capacity); Dougherty v. Snyder, 621 Fed. App'x 715, 717 n.3 (3d Cir. 2015) ("[T]ax treatment of [single-member] LLCs is not determinative of the manner in which

The Court finds that since Bell is only suing based on his loan guarantees, he has standing to sue in his individual capacity provided that Bell can establish his repayment obligations are actual and imminent.[3] As to Arakelian, he is suing for individual and corporate damages. To the extent Arakelian is suing for damages recoverable by the LLC, the Court will grant him leave to amend to add the LLC as a plaintiff.

Fed. R. Civ. P. 15(a)(2) states a preference for deciding cases on their merits, instructing the Court to grant parties leave to amend deficiencies "when justice so requires." The Court is not required to grant plaintiffs leave sua sponte, but it may do so at its discretion. See Adams v. Gould Inc., 739 F.3d 858, 868-69 (3d. Cir. 1984) (reversing the denial of motion for leave to amend after summary judgment was entered in the defendant's favor); see also Forman v. Davis, 371 U.S. 178, 182 (1962) ("Of course, the grant or denial of an opportunity to amend is within the discretion of

---

they may appear in federal court."); Albers v. Guthy-Renker Corp., 92 Fed. App'x 497 (9th Cir. 2004) (members of an LLC did not have standing to sue for injuries that were sustained by the LLC).

[3] See Berger v. Weinstein, 348 Fed. App'x 751, 754 (3d Cir. 2009) (affirming plaintiff lacked standing because he did not establish the alleged corporate payments were loans or that his duty to repay them was "certainly impending"); Powerhouse First, LLC v. Waldo Jersey City, LLC, C.A. Nos. A-1609-12T4, A-0656-13T4, A-0655-13T4, 2016 WL 3503150 (N.J. Super. Ct. App. Div. June 28, 2016), appeal dismissed, 228 N.J. 473 (2017) (citation omitted) ("As the loan guarantor, [the LLC member] has standing to assert defenses that would be available to the corporate borrowers whose loan he guaranteed.").

the District Court."). Here, granting plaintiffs leave to amend furthers the interest of justice and does not prejudice defendant.

Plaintiffs may not sue in an individual capacity on behalf of and for damages sustained by their LLCs. To the extent plaintiffs seek damages recoverable by their LLCs, they are granted leave to amend. If Bell chooses to proceed only in his individual capacity, he has standing for the injuries incurred as the guarantor for the loans issued to his LLCs. In either case, the Court finds permitting plaintiffs leave to amend their complaints will not prejudice defendants.

**CONCLUSION**

For all the foregoing reasons, defendant's "Motion[s] for Summary Judgment" [Doc. Nos. 29, 14] are DENIED. An appropriate Order will be separately entered.[4]

s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Dated: December 21st, 2018

---

[4] To be clear, the Court is not weighing in on the merits of the underlying claims. The Court is merely ruling that defendant's motion for summary judgment is denied.